Today is case number 19-1524, Anna Ruth Hernandez-Lara v. William P. Barr Good afternoon, Your Honor. May it please the Court, I am Seng Yeop Kim, counsel for Petitioner. I am splitting the argument time with Michael Counsel, aloha soledadon. I will cover the right to counsel and continuance issue, and Michael Counsel will argue about the immigration relief. In this case, the denial of counsel is so extreme that the right to counsel provided by the statute and regulation and under the due process clause were violated. The immigration judge completed this procedure within about a month. While she was detained in New Hampshire, where few immigration lawyers are available. And if you look at the third hearing, Petitioner was still under the impression that she was represented by the same lawyer who had represented her for bond at the second hearing. The immigration judge simply ignored her statement and took the case from her. Counsel, at least one might say superficially, you have an immigration judge here who granted a number of continuances, who seemed to care that Petitioner understood about the right to apply for asylum, wanted to be sure that the paperwork was filled out. Other than the shortened time period that you're talking about, this seemed to be an I.J. who wanted to be sure that the petitioner understood her rights and had an opportunity to take advantage of those rights. What was so wrong with the way in which the I.J. conducted himself? Your Honor, if you look at the transcript of every hearing, it appears that the immigration judge gave time to find counsel, but that's not how the record compares. The transcript shows that the immigration judge gave each continuance after the third to have her submit an asylum application in English. When she does not even speak, she's illiterate in Spanish because of absence of any education. In the meantime, she was looking for a lawyer, so the purpose of the continuance after the third hearing was not to give her a reasonable and realistic time to find a lawyer, but it was to help her, to require her to submit an asylum application. The immigration judge, in his conclusion, concluded that five continuances were sufficient, particularly because she was detained. So the fact that she was detained was used against her belief. Your Honor, this is extreme. When a person is detained in New Hampshire, where almost no immigration lawyers are available, and when even the list of the pro bono organizations is meaningless, because there isn't any in New Hampshire. So all of the detainees in New Hampshire, they have to rely on private attorneys or parole attorneys. That may all be true, but one gets the sense that the I.J. thought that the petitioner was playing games. There are these continuing references to talking to a lawyer, thinking that the lawyer was going to be there, a suggestion that the original lawyer was talking to another lawyer who, given another day or two, may decide that that lawyer will participate. The I.J. senses that this is game playing for the sake of delay. Why wasn't the I.J. entitled to make that judgment? Your Honor, immigration judge did not find that there was any bad faith trying to delay the proceeding in the name of securing counsel. The B.I. did not mention anything about bad faith. Even the government's brief, in this case, did not mention anything about bad faith evidence. When there's absence of bad faith evidence, she should have given a realistic and reasonable time to secure counsel. Your Honor, the government itself was open to having at least an additional week, right? Yes, Your Honor. At the last hearing, which happened November 16, the attorney representing the Department of Homeland Security was conditionally willing to agree with one more continuous. And did your client, in response to that offer, say, no, I need to at least make it possible that there would be just attorney prep time? My client did not specify about that issue, but my client just admitted. The I.J. rejected the government's offer, even without any reason to think that if it had accepted the government's offer, it would have been unacceptable to the petitioner. Is that a fair reading of the record? Yes, Your Honor, that's a fair reading of the record. At this point, wasn't the petitioner saying, I need another day or two? Wasn't the representation that the lawyer who was considering taking on the case needed another day or two? Am I correct that that representation was made? I think that's because of the translation issue, but I do not think the petitioner specifically mentioned a day or two days. It was just merely modest one more continuous so that the petitioner could be represented by an attorney that she actually named in the record. And that's when the attorney representing the Department of Homeland Security was conditionally willing to agree with. I thought her attorney or her potential attorney had said she just needed another day or he just needed another day. Is that right? It's not clear of the record, but the petitioner, the threshold, the meaning of the petitioner last year was just needed one more continuous so that she could be represented. And she was represented. And through an attorney, she filed a notice of appeal to the BIA, even filed a motion to remand. Your Honor, quickly about the prejudice part. In this case, I believe that showing prejudice is not required because the degree of denial of counsel is just so extreme. But even if the court requires showing prejudice, the petitioner suffered from absence of counsel. First, the immigration judge made an incorrect factual determination with respect to the motive of the gang's desire to recruit her. And that's relevant to both the asylum and the withholding claim? Yes, Your Honor. But then it's, even if that was a problem, it's separately made a finding as to both about unable and unwilling with respect to the government. Yes, Your Honor. So to show prejudice, don't you need to show that with a lawyer that unable and unwilling finding would come out differently? Otherwise, you can't show prejudice. Your Honor, with respect to the unwilling and... Just before you answer on the merits of how you interpret, am I right that in order to show prejudice, you have to show that the lawyer would have provided some way of demonstrating that the IJ and BIA were wrong on the unable and unwilling finding? Yes, Your Honor. Counsel, I thought your position might be that since you're claiming the outright denial of counsel, that no prejudice has to be shown at all. I'm the assumption that there's prejudice. Yes, Your Honor. Our position is that showing prejudice is not required. Okay. But even if it is required, prejudice is there because petitioner suffered from absence of counsel. But to do that, you have to show that counsel would have assisted on the unable and unwilling prong of the test for withholding and asylum. That's one of the factors that petitioner has to overcome. There are other factors that she suffered from absence of counsel. An example... Let me ask you a question. For asylum, you would have had to get by the one-year bar, which was pretty clear. And I assume from your argument is that a lawyer could have framed that issue differently than it was actually framed when she was pro se. Yes, Your Honor. The one-year deadline... So petitioner came to United States in 2013. And she heard about being accused of MA-13 in addition to 18th Street Gang in 2016. So it appears that one-year deadline cannot be overcome. However, there's an evidence of Interpol Red Notice that was not marked as evidence by the immigration judge. That document could serve as evidence for one-year exception under changed circumstances. But only if she can show that you could make an asylum claim based on that condition of now being targeted. So what would that look like? I didn't see anything in the brief that develops what that asylum claim would be. Asylum would be because of the fact that now she's being accused of a member of MA-13 and 18th Street Gang, two violent organized gangs. She'd be subject to persecution and targeted. On account of being what? On account of being... Number one, there are many theories. One, you could have amortized. No, no, no. That wouldn't be helpful for the Red Notice point. The Red Notice is about her being targeted as a gang. So it would have to be on account of her being suspected of being in a gang. But I don't see anything in the brief that develops the argument that that's a cognizable social group. So how can you win? I mean, I operate on the nature of the... You would have to show prejudice on that point, wouldn't you? That wouldn't necessarily affect your CAT claim or your withholding of removal claim. But for asylum, you're stuck with the evidence that would provide the basis of changed circumstances, which is not true for the CAT claim and withholding of removal claim. That is correct, Your Honor, but if she had... If she had some new hearing and had her pre-existing hearing... If you don't have to show prejudice, you can just presume it. I take that point. Okay. But on the unable and unwilling, assuming you had to show prejudice, what is the argument for how the presence of an attorney would have so aided her that we should conclude that the absence of it was prejudicial with respect to the finding that the government was not unable or unwilling? Your Honor, before I answer your question, Michael Custer would argue that even based on the current record, that she could prevail for that factor, the unable or unwilling, to protect her from the harm that she received. However, with the presence of counsel, the counsel could have asked more questions, the difference between domestic violence and gang threats. In the record, immigration judge asked that question, why petitioner believes that she would not be protected by police when the police was able to assist her and protect her from domestic violence. And she said, gangs are different. But that was it. There's nothing more questions, no more questions from the immigration judge, no more questions from the attorney for the Department of Homeland Security. So had the lawyer been present, the lawyer could have asked more questions about it. Furthermore, with the presence of counsel, the attorney would have submitted more evidence with respect to the country condition report. Is there anything in the record that shows what that more evidence would be? In the record, there isn't. Is that a problem? It's not dispositive, Your Honor. I mean, do you have authority for that? I understand if we presume prejudice, you wouldn't need to put that in. But insofar as you have to make a showing of prejudice, I would imagine you can't just speculate, well, I could have put in additional evidence, but I'm not going to tell you what it is. But even if the court does not find that petitioner cannot prove the prejudice based on the current record, there's at least, at a minimum, the Department of State country condition report that supports her claim. Your Honor. May it please the Court, good afternoon, Your Honors, and thank you for the opportunity. Before I address all the issues that I'd like to present here today, I'd like the Court to view the issues presented here today as the same the Court has viewed over the years. There are two precedental cases, the Grady-Michael case and the Aldama roundhouse, where in both cases the Court viewed these particular social group cases where kinship ties to family is considered, may be considered a cognizable social group. Your Honors, there's two main issues, and one of them is that the BIA, the board, concluded that her persecution was not based on membership to a particular social group. But there's separate finding about unable and unwilling. Even if you succeed on that argument, you still would lose unless you can show they erred on unable and unwilling. Right, so you have to prove one or the other, unable or unwilling. And we have submitted during the appeal process, and I happen to be counsel for the appeal process, where the government has turned a blind eye to folks in my case as petitioner, Mrs. Hernandez, where they themselves are in fear of the gangs, pretty much the gang MS-13. Are you talking about the record in this case? Record in this case. And we have submitted country reports and news reports. The State Department report does state that the government, because of folks like our client, Mrs. Hernandez, who have been charged with possibly being part of a gang that, as she credibly has testified in court, she could be victimized, not only by society in general, but also by the police. In that State Department report, and also stated in our brief, including the police, the government, they will not assist folks like Mrs. Hernandez if she were to return to Salvador. So they are unwilling and unable to. Counsel, I thought in these cases, and we've acknowledged on this unable or unwilling issue, that these country condition reports can be helpful to make that case. But we usually, particularly in a situation where we have to say that the record compels a contrary result, we look for something that's more specific to the case rather than just this reliance on the country condition reports. In this case, all we have are the country condition reports. We have nothing more specific than that. Isn't that really problematic? Your Honor, I would say it's problematic if we didn't have a credible testimony. There were no challenges to the credibility of her testimony, not even when the immigration judge had reviewed her case. What's her testimony that's relevant with respect to unable or unwilling? So she mentioned as best as she could that there were domestic disputes, where there was a domestic violence situation she faced prior to entering the U.S. The police were called on. They did follow up through. But there was also another, and it's very sensitive information, but also a sexual assault situation that she encountered in her daughter that the police failed to continue prosecuting because the two defendants, one fled to the U.S. and the other is still in El Salvador. I thought the unable or unwilling analysis is to the claim when the persecution would be on account of her family status. Right. By virtue of the gang. Yep, and I'll get there. Okay. And I would like to defer and make it how it's distinct to the current issue. Should she have reported the incident, she would not have, and due to the reports, the country condition reports, like I mentioned earlier, they're unwilling, cops, police forces, military or civil are unwilling to assist because they themselves are afraid of this large, organized. That's the country report. You're talking about the country report now. The country report. What is there beyond the country report that relates to them being unable and unwilling to protect her from gang? Her credible and specific testimony. This court has ruled previously, and I have the case of Palua, Sola versus Holder, and this was back in 2004, where if there is only a testimony, credible testimony, and we do have that on the record, standing alone may be adequate to sustain the alien's burden of proof, and that proof. But what is her testimony that goes to the question of whether the government will be, what is the content of the testimony that goes to whether the government will be unable or unwilling to protect her from gangs on account of her family status? Right. Her fear of reporting to the police would have resulted in death, as they have threatened death to decapitate her head and just leave it behind in a river or mountain. That's the reason why she was not, not that she wasn't willing to report. She was afraid because as it happened to neighbors of hers, they, as stated in the brief, they reported that there were consequences to their reporting. I myself would be in that same situation, so a reasonable fact finder, and that's why we ask this case to be remanded back to the immigration judge. You know, obviously we'd have to go through that route to the board, to the immigration judge, as deciding the matter of MEBJ, the Third Circuit case decided to go back to the BIA and back to the immigration judge so that there's actually further analysis. There's also with access of counsel in this case, and that's another distinction that our client was a pro se, but having access to counsel would help articulate all these issues before your honors. You know, there are two kinds of relief she was entitled to, asylum and withholding of removal. Correct. With withholding of removal, as I understand it, the one-year bar does not apply, and is it your argument also that if she got another bite at the apple that the withholding of removal, which would protect her from having to leave a different status, but isn't that an issue that you haven't said very much about? Yes, your honor, and thank you for bringing that up. So there are obviously three reliefs potentially available, and we obviously support each claim. Asylum is discretionary. The lower standard you're seeking, you need to protect the ground. Withholding is the higher standard where you have to show clear probability. I don't see a pro se, illiterate petitioner able to even articulate this before a judge within a very little amount of time. And then CAT claims. Well, if I looked at the record more closely, am I going to find anywhere where withholding of removal was before the IJ? It would have been before the IJ should she had competent counsel be able to address those issues. But I'm not going to find it within the record, I think. You'd find it, your honor, and just something to consider. The Interpol notice, as my co-counsel stated, exposes her to further danger, not only through gangs, but possibly police. You haven't answered my question. I look at the record closely. Right. Am I going to find that withholding of removal, the danger to her, was before the IJ? Yes. You would find it on the record. There's protected ground, because withholding, you still have to show protected ground as one of the grounds enumerated under the INA. You'd also have to show harm. Is there a form she checked off or anything like that that requested that relief? Yes. On the application of 589, on the first page above, there's that section, and she did check it off. Let me check withholding. It was checked off, CAT, which is withholding. There's deferral and there's withholding under CAT. But there's no direct evidence on withholding, other than her general testimony that I'm afraid if I go back, I'm going to- There's country reports. The State Department report is considered evidence actually introduced by the immigration judge. Did the IJ, I forget now, did the IJ address withholding over there? No, they did not. The IJ touched on it, like, not even a second. Would have been with counsel present, would have articulated all the issues. Did the BIA address withholding? Not as thoroughly on her. Is that a yes? No. Did not address? Did not. Did you have the IJ to the BIA raise withholding? We raised withholding. Again, Your Honor, it was issues that could have been articulated further had we had time. I was the appeals counsel on this case, and we had to submit the brief very short amount of time. Should we have had the case from the beginning when the record was being established, we had further. Thank you. Thank you, Your Honor. I have a question. Perhaps this is not for you. Perhaps this is for court counsel. We had a discussion earlier of prejudice and showing the prejudice that might be required. I'm just curious, how would- I mean, in a situation where there's been arguably a denial of counsel, in the absence of counsel, it would be very difficult to show on that record what might have been done, what the prejudice might be in terms of a lost opportunity. So how would prejudice take the form of some kind of offer of proof to the appellate court that this is what, if we had counsel, this is what we could have done? How would the issue of prejudice be addressed? What would be the procedure and the form that that would take? Okay, Your Honor. Again, I believe that's for counsel. Thank you. Briefly, Your Honor, to answer your question, the prejudice could be shown with additional evidence or with the evidence that was not marked by immigration judge as part of the record, which could serve as additional theories for persecution and conviction against torture claims. And we emphasize in our brief that with marking of interprogram notice, which alleges that petitioner is a member of MS-13, and on top of 18th Street gang, why it does not even describe what she committed or she did. That evidence could serve additional theory, could create additional theories for persecution and conviction against torture. I understand what you're saying also that if the record could be such that the presence of a lawyer could have, let's say you lose on the protected, on account of nexus ground, or you lose on unable and unwilling, and the record's not so compelling that you have to come out the other way, but it would be within the discretion of an I.J. to come out the other way, and if it came out the other way, we wouldn't reverse. And if you can make an argument that on this record, a lawyer would have been able to present things coherently enough that the I.J. would have come out the other way, such that we then would have deferred, that would suffice to show prejudice. That is correct, Your Honor. In the immigration case, as Your Honor should know, the factual determination has to be done and developed and concluded by the immigration judge, because there is no more other than the motion to reopen or remand. But in theory, in this case, if one of your arguments is that the presentation with a lawyer could have pointed the I.J. to see things differently, such that they might have come out the other way, and then we would not have disturbed it on appeal, so you would effectively have had prejudice, even though you don't have any evidence that would compel a conclusion in your favor. So, counsel, do you concede that you have to show prejudice on the basis of the existing record? In other words, you would have to show, as I think Judge Barron is suggesting, that even with the record as it is, with the benefit of counsel, counsel could have made arguments to the I.J. as to why, for example, a nexus had been shown or it's the unable or unwilling standard had been met? Is that what you're saying, that the prejudice does have to be shown on the basis of the existing record? Our position is that, Your Honor, the threshold question with prejudice is whether, with the presence of counsel, whether the outcome of the proceeding could have been different. Theoretically, actual witnesses could be added when she has a new hearing, You're just saying one way you can show prejudice is by looking to the existing record and showing that it could have been more coherently presented. Yes, Your Honor. Another way it could be is by supplementing the record. You haven't supplemented it here. That is correct. But with an existing record, the prejudice could be shown. That's our position. Thank you. Thank you. May it please the Court, Zoe Heller on behalf of the Attorney General. As Your Honors have heard, this case involves a native and citizen of El Salvador who illegally entered the United States back in 2013 without making any claim of persecution until five years later when she was apprehended by immigration authorities. The record here does not compel reversal of the agency's two dispositive findings on the merits of her claims. One, that she failed to establish that the Salvadoran government is unable and unwilling to protect her from persecutory harm. And two, that she failed to establish the nexus to the alleged protected women. Counsel, I'd like to beg again with right to counsel. I'd like to focus on that too. Sure. And just to give you a target, there's a line from a Supreme Court case dealing with right to counsel in a contempt setting. In that case, the Supreme Court uses the phrase, a myopic insistence on expeditiousness. I'd suggest that that aptly characterizes exactly what went on here. And I say that because the proceedings here took place in a very short period of time, maybe a month, five weeks. That was expeditious for sure, but perhaps at a very high cost. What was the hurry? Well, Your Honor, I cannot presume to be that immigration judge exactly until he was going through his line. But the record, as we read it, one, she was detained. And, of course, the government does not want to keep aliens detained any longer than necessary. They want to have their claims heard and adjudicated by an immigration judge. I would say that this was not. There's something strange about the idea that your time for finding counsel is reduced because you're detained, which makes it hard to find counsel. Well, here. So here we have this. This is not a case that she was prevented from an opportunity to find pro bono counsel. She was in the process of. What else was she going to find? She was in the process of retaining private counsel in this case. In fact, she repeatedly said on several of her hearings that I'm meeting with this attorney the next day. Okay. The immigration judge said, again, gave the advice, said, I'll give you a week. Make sure that attorney enters a notice of appearance. This happened on several of these hearings. But, Your Honor, is part of the rationale for why the time could be this short that she was detained? I think it speaks to making sure that the case doesn't move along. So she would have more time if she was not detained? Again, I can't. Well, it has to be one of. If that's a reason for shortening the time she can get counsel, it must be the case that if she were not detained, you'd give her more time. Well, again, it's one. And, again, I'm using my reading of the record as a reasoning that an immigration judge should have. And I appreciate that. That's what we're supposed to review. But what is the argument that that is a non-arbitrary reason for reducing the time for counsel? I would agree, Your Honor, if that was the sole reason. I'm saying if it's any part of the reason. I don't think that that detracts from, again, in this case. So it's not a reason? Then I will retract that it wasn't. Okay. So then what are the other reasons? Okay. So, again, during the hearings we have her reporting at several of these hearings that she has an attorney. She's speaking with that attorney. She's trying to get an attorney. And she is incarcerated at the time, and she's illiterate. And we have a five-week span. It seems to me that's a rush to put this case to a hearing. I've been hearing these cases for more years than I care to relate. And many of them have started 10, 15 years ago. This year she's in custody. It seems to me that a reasonable period of time should have been given to her to find counsel, given her circumstances. Illiterate, can't speak English, can't read and write in Spanish, apparently. And she's incarcerated in New Hampshire. How is she supposed to get – she's doing the best she can, and eventually she writes a petition, which is done by a jailhouse lawyer. Isn't that what we've got here? She did have an attorney for her bond hearing. So I think that is a – That wasn't the attorney who was apparently willing to be hired, perhaps because they're not going to get paid. I don't know. I don't know the circumstances. Well, again, Your Honor, I would speculate as to the reasons. But she did – this is not – again, she was able to find an attorney. To Your Honor's point, that she wouldn't be able to find an attorney. That should shorten the clock, not lengthen it. She had counsel for bond hearing. So she's doing – now, she's not – understandably, not able to keep that counsel. Why should that time be charged against her for finding counsel for the real case? That would seem to strengthen the argument that she's serious about getting counsel and not playing games. Because she actually had counsel. Now she's in touch with the legal community, odds that she'll find something you would think would go up. But that's also counted against her. That seems strange. I don't think it's necessarily counted against her. Well, it's counted against her in the sense that if you start the clock from back earlier, it looks like she had more time. If you start the clock from when the bond counsel leaves, she only had about 19 days, right? Correct. And it depends on, as Your Honor points out, where you want to start this clock. Well, you're telling me where you want to start it. Well, I started from the first appearance at a master counsel hearing. But then that means that we count against her the time when she had bond counsel. It is just a factor, again, going to the point that she couldn't be able to find an attorney. She was able to have an attorney present for a bond hearing. But she's not going to get two. She had one. That person leaves. That's not on her. Correct. Correct. And then we say now it's 19 days for her to try again, knowing she's pretty good at finding counsel. So give her a chance to do it. She kept saying that at the next hearing that she was in touch with another lawyer. She was speaking with that lawyer the next day. And the timeline actually shows that she didn't ultimately retain this lawyer until they filed the bond agreement. Counsel, it's striking that Dr. Barron pointed this out earlier, that at the final merits hearing, when the IJ asks government counsel about the possibility of further time, counsel says, okay, as long as she can guarantee that we'll have counsel. This is the same, maybe not the same counsel, but earlier the government had opposed any kind of continuance. And the IJ in that case had granted. But here you have a situation where the government says, okay, give her one more shot. And she has said, I think, that in a day or two I might be able to have a lawyer. What would justify, in light of the government's concession, the IJ saying, nope, this is enough. We're going to go on and decide this without counsel. Well, at that last hearing, the immigration judge was not inclined to put any sort of limitations on what the continuance would be for. And at that point, when he denied the government's- Pretty strong limitations to not grant one. We said, let's go on. We're going to decide the merits here and now. Going forward. And then the DE just said, then we're ready to proceed with this case. And that is when they objected. During the previous hearings, the immigration judge made that determination on his own regard about the continuances. It was at this last hearing that DHS counsel objected and that the case proceeded. Your Honors, even if you find that there was no good cause for the continuance, as Your Honors have tried to elicit testimony here, there is no establishment of actual prejudice. And that is the circuit precedent here that the alien must establish actual prejudice. And that is to both points. Just to be clear, we've never held that with respect to a denial of counsel. You're talking about a continuance, right? Well, that's what happened here. That is what was argued on appeal to the board was that the immigration judge abused, did not have good cause in denying a sixth continuance in this case. Did they contend that it was a violation of the statutory right to counsel? Not before the board. They did not? They were arguing that had they had the counsel, they could have elicited other testimony. So when we get up here to the court, we're making, and they also said that, you know, that the case. I understand, but just in the brief to the BIA, should they argue that there was a violation of the statutory right to counsel and or due process right to counsel? They argued that immigration judge had no good cause for denying. I understand that, but that's not an answer to my question. Right. I would say that obviously the basis of the claim was for her to get counsel. Whether or not they asserted, I don't think it was explicitly made clear that they were denied a statutory right to counsel. Did they cite the statute that gives the right? And if they did, that would suggest that was the basis for the claim. Then it wouldn't be about just a denial of a continuance. It would be about the denial of right to counsel. And we've never held, one way or the other, whether you have to show prejudice on that. We've said generally for due process violations, you have to show prejudice, but we've never addressed either prejudice with respect to the statutory denial or a due process denial when it's a denial of right to counsel. Right. Again, here, I don't believe that there was a claim alleged as to a statutory right to counsel. She was arguing that the assistance of counsel would have, obviously, her claim would be that would have elaborated more on her claims. However, whatever the labels were, this was clearly all about having a chance to have counsel. It was getting more time, getting a continuance, if you will, to have counsel. So the issue of counsel is embedded in the whole continuance discussion. And I agree with you all, and I'm not trying to dance around the issue here. But when she did retain counsel and she filed both her board brief and her motion to remand, the claim as alleged mirrors the claim that she presented before the immigration judge proceeding pro se. So therefore, the government's position is that she cannot show prejudice because now with counsel, you are making the same claim that you alleged before the immigration judge. More coherently. Arguably more coherently. But the facts remain unchanged. The evidence and the claims mirror, again, that as was before the immigration judge. They have not shown. Now with counsel before the board, how any of this, her new declaration, her new evidence would have changed the outcome in her case. If presented properly, it certainly might have changed her likelihood of getting withholding of removal, which got around the bar, the one-year bar number one, and her real fear of going back where she's likely to be previously armed up to the likelihood of death. So that's a quintessential withholding of removal case. Let me go back and just kind of talk about the standards here. So we have two findings here with regard to asylum. One, that it was untimely and no exception to that time bar. We also have an alternative merits finding as to asylum. So these are unable and willing and the nexus determination were made as an alternative finding to that. So both of those, as to the nexus, the argument was the I.J. did not see that the claim was family status. And with a lawyer, the I.J. would have been much more likely to see that. Even if the record doesn't compel the conclusion that it was on family status, the I.J. might well have, with a lawyer's assistance, ruled on that issue, and then we would have been able to decide it. That would be prejudice. And then on unable and unwilling, as I understand it, the argument is a lawyer could have developed the argument about futility much more effectively than it was developed by a person who was uncounseled. And again, the record doesn't compel the finding of unable and willing, but with counsel's assistance, there is enough of a probability that the I.J. would have ruled for them on that issue. And then again, it would be a different standard of review, so that was prejudice. Those are the two arguments. What's wrong with them? Well, again, here we have a counseled board brief and motion to remand. Well, that's where I'm getting it from. That's where I'm getting these arguments from. Now, what is wrong with that contention about the record? Because nothing, as the board found, nothing in the extra evidence and the arguments showed that the immigration judge would have ruled differently. That was the opportunity, with counsel, to make that point. Well, that's just a value judgment that they made based on whatever. Well, I mean, if the court finds evidence, then I can say after this court rules, wait, I would have made an argument. I'm going to get another attorney to make an argument. They're somewhat differently positioned. What's the standard of prejudice? In other words, what is the standard for assessing whether there's prejudice? The outcome that she could have established her prima facie eligibility as to how many Is it a reasonable probability? Do you see what I'm saying? What is the actual standard? I believe that it would have changed materially affected. Materially affected. Correct. That's not so high. Well, again, here the board found and no record of evidence compels a contrary conclusion. And that's what your contention is that we should be ruling their prejudice ruling for substantial evidence. Correct, Your Honor. Because the board did have that opportunity to review those arguments. If the panel has no further questions, we, the government, ask that the court deny the petition for review. Thank you. All rise, please.